UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Robert Arias

     v.                              Civil No. 17-cv-516-LM
                                      Opinion No. 2023 DNH 076 P

Noah A. Herzon, et al.


# **O R D E R**

Plaintiff Robert Arias alleges that several Drug Enforcement Administration ("DEA") agents used excessive force on him (or failed to intervene against other agents' use of excessive force) when they arrested him in September 2016. Arias's claims arise under the Fourth Amendment. He seeks damages from the defendants under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Defendants move for summary judgment (doc. no. 66). They rely on recent Supreme Court precedent, Egbert v. Boule, --- U.S. ---, 142 S. Ct. 1793 (2022), that strictly limits the applicability of Bivens outside of its original "context." Defendants contend that Arias's excessive force and failure-to-intervene claims seek to apply Bivens to a new context. Arias disagrees and contends that both claims survive summary judgment because they "fall within the ambit of Bivens."

For the reasons that follow, the court agrees with defendants and grants their motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper only if the moving party can demonstrate that there is no evidence in the record to support a judgment for the nonmoving party. Borges v. Serrano-Isern, 605 F.3d 1, 5, 8 (1st Cir. 2010); see also Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment, the courts must view the evidence in the light most favorable to the nonmoving party, must draw all reasonable inferences in that party's favor, and may neither make credibility determinations nor weigh the evidence.  Harris v. Scarcelli, 835 F.3d 24, 29 (1st Cir. 2016); Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

## BACKGROUND

The following facts are drawn from the court's (McAuliffe, J.) first summary judgment order (doc. no. 56).  They are uncontested for purposes of the issue before the court.

Law enforcement officers investigating drug trafficking made several controlled purchases of fentanyl-laced heroin from Arias.  On September 8, 2016, the 6 named defendants[1] and 12 other federal law enforcement officers arrested Arias.  Arias's arrest was authorized by an arrest warrant.  All of the defendants are either DEA agents or local police officers assigned to a DEA task force.

The arrest occurred at the parking lot of the Rockingham Park Mall in Salem, New Hampshire.  Arias arrived at the mall in a car driven by his pregnant

---

[1] The court previously granted summary judgment in favor of two of the six defendants, so only four officers remain in this case.  See doc. no. 56

wife, Carmen Jose.  Arias sat in the front passenger seat.  Carmen Jose pulled the car into a parking spot.  Several police cars pulled in, blocking Arias's car into the spot.  Seeing that she had nowhere to move the car, Carmen Jose put the car into park.  The officers, many in plain clothes, approached the car with their weapons drawn.

The officers tried to remove Arias from the car, but he was wearing a seatbelt.  An officer cut Arias's seatbelt and dragged him from the car, took him to the ground, and handcuffed him.  Both Arias and Carmen Jose complied with all of the officers' commands.  The officers stated in affidavits that the arrest was quick and nonviolent.  They say that Arias suffered no injuries of significance.

By contrast, Arias stated in an affidavit that the officers dragged him from the car by his neck.  Once the officers had Arias on the ground, they handcuffed him, stepped on his legs, and hit his head against the ground.  Arias involuntarily urinated in his pants because of the fear the officers caused him.  At some point, Arias lost consciousness.  Carmen Jose recounted a similar version of events in her affidavit.

Arias brought this suit in 2017.  He alleges that the arresting officers used excessive force against him in violation of the Fourth Amendment.  He alleges that the officers who watched his violent arrest but failed to protect him also violated the Fourth Amendment.

Arias seeks money damages for the alleged physical and emotional injuries that he suffered.  In January 2021, this court (McAuliffe, J.) denied defendants'

motion for summary judgment on the ground of qualified immunity.  Defendants
filed this second motion for summary judgment after the Supreme Court's decision
in Egbert v. Boule.

## DISCUSSION

Relying on Egbert, defendants argue that the court must dismiss Arias's
claims for excessive force and failure to intervene in the use of excessive force
because this case applies Bivens in a "new context."  Arias responds that the
circumstances of his claims are, in all material respects, like those of Bivens.  After
reviewing the applicable law, the court addresses Arias's excessive-force claims first
and his failure-to-intervene claims second.

The Fourth Amendment prohibits federal officers from using excessive force
on arrestees.  E.g., Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 70-71 (1st Cir.
2016).  While 42 U.S.C. § 1983 permits plaintiffs to bring damages suits against
state officials for constitutional violations, there is no analogous statutory cause of
action for such suits against federal officials.  See Ziglar v. Abbasi, 582 U.S. 120,
130-31 (2017).  Notwithstanding that absence of statutory authorization, the
Supreme Court held in Bivens that an arrestee could bring a suit under the Fourth
Amendment for damages from the federal officers who searched his home and
arrested him, allegedly using excessive force in the process.  403 U.S. at 397.
Subsequently, the Supreme Court recognized a similar "implied cause of action"
under the constitution in two other suits seeking damages for alleged constitutional
violations.  First, in Davis v. Passman, 442 U.S 228 (1979), the Court held that a

former congressional staffer could bring a suit for damages against a United States Congressman for sex discrimination in violation of the Fifth Amendment.  Then, in Carlson v. Green, 446 U.S. 14 (1980), the Court held that a deceased federal inmate's estate could bring a suit for damages against prison officials for their failure to provide the inmate adequate medical treatment in violation of the Eighth Amendment.

But since deciding Carlson, the Supreme Court has "consistently refused" to extend Bivens despite numerous opportunities to do so.  See Abbasi, 582 U.S. at 135; see also Drewniak v. U.S. CBP, 554 F. Supp. 3d 348, 355 (D.N.H. 2021) (collecting Supreme Court cases).  More recently, the Supreme Court "has scaled back Bivens significantly, delivering a trilogy of opinions expressing opposition toward any expansion of Bivens actions."  See Bulger v. Hurwitz, 62 F.4th 127, 136 (4th Cir. 2023) (citing Egbert, 142 S. Ct. at 1803, Hernandez v. Mesa, 589 U.S. ---, 140 S. Ct. 735, 741 (2020), and Abbasi, 582 U.S. at 135).  This approach derives from the Court's separation-of-powers concerns, as the Supreme Court has expressed its view that Congress—not the courts—should determine whether a private right of action for damages should exist for constitutional violations.  See Abbasi, 582 U.S. at 133-34 ("[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation.").

At the same time, the Supreme Court has not overruled <u>Bivens</u>. <u>Egbert</u>, 142 S. Ct. at 1803 ("[R]ather than dispense with <u>Bivens</u> altogether, we have emphasized that recognizing a cause of action under <u>Bivens</u> is 'a disfavored judicial activity.'"). Instead, the Supreme Court has imposed "a highly restrictive two-step analysis," which limits when claims for damages against federal officers may proceed. <u>Bulger</u>, 62 F.4th at 136-37.

Under the first step, the court must determine whether the claim seeks to apply <u>Bivens</u> in a "new context" or involves a "new category of defendant." <u>Id.</u> at 137 (quoting <u>Hernandez</u>, 140 S. Ct. at 743). A case presents "a new <u>Bivens</u> context" if it is "meaningfully" different from all three cases in which the Supreme Court has authorized damages claims against federal officers for constitutional violations. <u>Egbert</u>, 142 S. Ct. at 1803; <u>Bulger</u>, 62 F.4th at 137. Meaningful differences may include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; <u>or the presence of potential special factors that previous Bivens cases did not consider.</u>

<u>Abbasi</u>, 582 U.S. at 140 (emphasis added). Thus, a meaningful difference from <u>Bivens</u> exists where a claim presents "special factors" which the Supreme Court did not consider in <u>Bivens</u>. <u>Id.</u> In <u>Egbert</u>, the Supreme Court made clear that an alternative remedial structure, created by either the Executive or by Congress, is

one such "special factor" that courts must consider in making this determination.
See 142 S. Ct. at 1806-07.  This followed from the Supreme Court's earlier holdings
that legislatively created comprehensive alternative remedies can make the
"situation altogether different from Bivens."  See Correctional Servs. Corp. v.
Malesko, 534 U.S. 61, 73 (2001); Bush v. Lucas, 462 U.S. 367, 378, 385-86 (1983);
see also Gonzalez v. Velez, 864 F.3d 45, 52-54 (1st Cir. 2017) (holding, in the
alternative, that the existence of an "alternative process that Congress may have
viewed as an equally effective surrogate for an action brought directly under the
Constitution" forecloses relief under Bivens).

   The court proceeds to the second step in the analysis if it determines that a
meaningful difference exists.  At the second step, the court must dismiss the claim if
there is "any rational reason (even one)" to think that either Congress or the
Executive branch "is better suited" to determine whether a cause of action exists
than the courts.  Egbert, 142 S. Ct. at 1803.  In Egbert, the Supreme Court
acknowledged that the two-step analysis "often resolve[s] to a single question:
whether there is any reason to think that Congress might be better equipped to
create a damages remedy."  Id.  And Egbert further clarified that the presence of an
alternative remedial structure is a "special factor" counseling in favor of dismissal.
See id. at 1806-07.

   Thus, after Egbert, once a court determines that there is an alternative
remedial structure that Bivens did not consider, the two-step framework collapses
into one question:  Is there any reason to think that the Judiciary is better equipped

than Congress or the Executive branches to augment that remedy?  Egbert, 142 S. Ct. at 1805.  The answer requires deference to the other branches and will likely always be answered in the negative.  As explained in Egbert: "[T]he question of whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.  So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy."  Id. at 1807.

The parties agree that, of the three cases in which the Supreme Court has authorized damages causes of action against federal officers (Bivens, Carlson, and Davis), only Bivens itself is relevant here.  In Bivens, officers from the Federal Bureau of Narcotics[2] entered Bivens's apartment and arrested him for alleged narcotics crimes.  403 U.S. at 389.  Bivens alleged that the agents handcuffed him "in front of his wife and children, and threatened to arrest the entire family."  Id. The officers searched the apartment, and they took Bivens to a federal courthouse, where he was interrogated, booked, and "subjected to a visual strip search."  Id.

---

[2] The Supreme Court in Abbasi, 582 U.S. at 140, described Bivens as involving "a claim against FBI agents," although Bivens involved agents from the Federal Bureau of Narcotics.  Bivens, 403 U.S. at 389 ("Petitioner's complaint alleged that . . . agents of the Federal Bureau of Narcotics acting under claim of federal authority . . . ."); Bivens, 276 F. Supp. 12, 13 (E.D.N.Y. 1967) (quoting Bivens's complaint as bringing claims against "six (6) Agents of the U.S. Narcotic Bureau"); Bivens, 456 F.2d 1339, 1341 (2d Cir. 1972) (stating, on remand from Supreme Court, that "we must now decide the important and highly controversial question whether the acts of these Federal Bureau of Narcotics Agents are clothed with immunity . . . ."). It is unclear why the Supreme Court in Abbasi described the defendants in Bivens as FBI agents.

Bivens later brought suit against the arresting officers.  Id.  He alleged that the officers arrested him and searched his apartment without a warrant and without probable cause.  Id.  Additionally and separately, he alleged that the officers used unreasonable force when arresting him.  Id.  The Supreme Court held that Bivens could seek money damages against the officers for all those alleged violations of the Fourth Amendment, even though Congress had not expressly created a damages remedy by statute.  Id. at 397 ("[W]e hold that petitioner is entitled to recovery money damages for any injuries he has suffered as a result of the agents' violation of the Amendment.").

Despite its refusal to extend Bivens, the Court recognizes that Bivens is still good law.  Abbasi, 582 U.S. at 134.  In Abbasi, the Court explained that the "settled law of Bivens in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere."  Id.

Relying on Bivens, Arias brings two Fourth Amendment excessive force claims against the DEA agents who arrested him.  The first claim is brought against the officers who inflicted the excessive force, and the second is brought against the officers who failed to intervene to stop the excessive force.  Until Egbert, Arias's first Bivens claim may have survived.  After Egbert, neither of his claims is viable.

I.    Excessive Force

Defendants argue that Arias's excessive-force claims are materially different from <u>Bivens</u> because (1) Arias was arrested pursuant to warrant in a parking lot while Bivens's arrest occurred without a warrant in his home, and (2) the DEA has, like Border Patrol, an alternative remedial structure, a factor which was not considered in <u>Bivens</u> and was dispositive in <u>Egbert</u>.  Defendants' second argument is persuasive.

<u>Bivens</u> and Arias's claims share many of the same background facts: an arrest made by federal narcotics agents investigating a violation of federal drug laws that would have been routine but for the alleged constitutional violations. Whether the officers had a warrant for Arias's arrest is not a meaningful difference from <u>Bivens</u>.  See <u>Bueno Diaz v. Mercurio,</u> 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020) (finding that plaintiff's arrest pursuant to a warrant did not create a meaningful difference from <u>Bivens</u> when plaintiff alleged excessive force claims).  As discussed, <u>Bivens</u> involved <u>two</u> allegedly unlawful actions: a warrantless search and seizure and an arrest executed with excessive force, and it recognized the availability of damages for both violations.  See 403 U.S. at 389 ("[H]is complaint asserted that the arrest and search were effected without a warrant, and that unreasonable force was employed in making the arrest . . . .").  The arresting officers' possession of a warrant in this case is a difference from <u>Bivens</u>, but not one with meaning. Likewise, the court does not find persuasive defendants' argument that this case is meaningfully different from <u>Bivens</u> because <u>Bivens</u> involved an arrest in the

plaintiff's home while this case involves an arrest in a parking lot.  These differences are illusory rather than meaningful.  See Abbasi, 582 U.S. at 149 (acknowledging that some differences "will be so trivial that they will not suffice to create a new Bivens context").  Furthermore, the category of defendants is effectively the same here as in Bivens.  In 1973, the functions of the Federal Bureau of Narcotics (the agency at issue in Bivens) were transferred to the DEA — the agency defendants work for in this case.[3]

Here, however, the defendants also point to the DEA's alternative remedial structures under the Inspector General Act of 1978, 5 U.S.C. chapter 4,[4] and the Office of Professional Responsibility, 28 C.F.R. § 0.29c(c).  These processes allow individuals like Arias to file misconduct reports against DEA agents, which may then be investigated and remedied by the appropriate office.  Defendants contend that the Border Patrol's similar administrative process was critical to the Supreme Court's holding in Egbert that Bivens did not extend to a claim against a border patrol agent.  The court agrees that the existence of these alternative remedial

---

[3] Specifically, in 1968, the Bureau of Narcotics (which had been part of the Department of the Treasury) was abolished and its functions transferred to the newly established Bureau of Narcotics and Dangerous Drugs, part of the Department of Justice.  See Reorganization Plan No. 1 of 1968, 38 F.R. 15932, 1968-2 C.B. 907; United States v. Feola, 420 U.S. 671, 684 n.18 (1975).  Then, in 1973, the Bureau of Narcotics and Dangerous Drugs was abolished and its functions were transferred to the DEA.  See Reorganization Plan No. 2 of 1973, 38 F.R. 15932, 87 Stat. 1091.

[4] The Inspector General Act was initially codified in an appendix to the U.S. code, 5 U.S.C.App. §§ 1 et seq.  Effective December 2022, Congress moved those provisions to 5 U.S.C. chapter 4.  Pub. L. 117-286, 136 Stat. 4196.

structures is sufficient both to place Arias's case in a new context and to preclude expansion of <u>Bivens</u> to that new context.

In <u>Abbasi</u>, the Supreme Court stated that one reason to find a new context is the "presence of potential special factors that previous <u>Bivens</u> cases did not consider." 582 U.S. at 140.  Then, in <u>Egbert</u>, the Supreme Court made clear that an alternative remedial structure is a "special factor" which courts must give heightened consideration.  <u>See</u> 142 S. Ct. at 1806-07.  In other words, the court—at either the first or second step of the <u>Abbasi</u> framework—cannot ignore the presence of special factors which were not considered in <u>Bivens</u>.  McGee v. Bureau of Prisons, No. CV 23-00190 LEK-KJM, 2023 WL 3467116, at *5 (D. Haw. May 15, 2023) (holding that BOP's administrative remedial structure was not considered in <u>Carlson</u> and therefore presents a new context for this <u>Bivens</u> claim).

The alternative remedial structure identified by the government applies to alleged misconduct by DEA agents and was created in 1978 – several years after the Supreme Court decided <u>Bivens</u>.  Therefore, it is a "special factor" which the Supreme Court did not consider in <u>Bivens</u>.  And the existence of a special factor like an alternative remedial structure is sufficient to place a case in a new context.[5]  <u>See</u> <u>Abbasi</u>, 582 U.S. at 140; <u>Egbert</u>, 142 S. Ct. at 1803.

---

[5] The court need not analyze all of the features of the DEA's alternative remedial structure.  In <u>Egbert</u>, the Supreme Court held that so long as Congress or the Executive created an alternative remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot apply <u>Bivens</u> to federal agents covered by that process.  <u>See</u> 142 S. Ct. at 1806.  Arias has supplied no reason to distinguish the alternative remedial structures at issue here from the process at issue in <u>Egbert</u>, which the Supreme Court found to be sufficient to preclude application of

In light of Egbert, the court is not persuaded to apply the approach to the two-step framework used in Aaron v. City of Lowell, --- F. Supp. 3d ---, No. 20-cv-11604-ADB, 2023 WL 2743337, at *16 (D. Mass. Mar. 31, 2023), and Kennedy v. Massachusetts, No. 22-cv-11152, --- F. Supp. 3d ---, ---, 2022 WL 17343849, at *4 (D. Mass. Nov. 30, 2022).  Both cases hold that a court need not consider an alternative remedial structure unless it reaches the second step of the Abbasi framework. However, Abbasi states that courts must consider special factors which the Supreme Court did not consider in Bivens.  582 U.S. at 140.  And even though the Court's analysis in Egbert was made in the second step of the framework, the Supreme Court observed that the two-step Abbasi analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  142 S. Ct. at 1803.  Egbert stresses that the existence of a remedial scheme is sufficient by itself to carry the day: "If there are alternative remedial structures in place, 'that alone', like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'"  Id. at 1804; see also id. at 1806 (holding that existence of "alternative remedies . . . independently foreclose a Bivens action").  That is the case here: the existence of the alternative remedial scheme is enough to both place the case into a new context at the first step and to prohibit expanding Bivens at the second step.

---

Bivens.  Additionally, because these alternative remedial structures are sufficient to require dismissal, the court does not reach whether the Federal Tort Claims Act, 28 U.S.C. § 2675, might also foreclose Arias's Bivens claims.

At bottom, this case is like Egbert: it presents with facts virtually

indistinguishable from Bivens.  But the two-step framework boils down to one

question: whether the presence of a special factor which was not considered in

Bivens precludes its application.  The court answers that question in the

affirmative.  The alternative remedial scheme authorized by the Inspector General

Act and implemented by the Executive branch is a reason to believe that Congress

is better positioned to create a damages remedy than the court.  See Egbert, 142 S.

Ct. at 1803, 1806-07.  For that reason, Arias's first set of excessive force claims are

dismissed.

II.    Failure to Intervene

Defendants also move for summary judgment as to Arias's failure-to-

intervene claims, arguing that Bivens did not involve claims for failure to intervene

in the use of excessive force.  Few courts have directly confronted the question,[6] and

there is minimal authority expressly recognizing a remedy under Bivens for failure

to intervene in the use of excessive force.  Accord Robinson v. Sauls, 2019 WL

_____

[6] Most opinions involving Fourth Amendment claims brought under Bivens
address arguments that the allegations are insufficient or are blocked by the difficult
hurdle of qualified immunity.  There are many decisions that address failure-to-
intervene claims brought under Bivens, but none that the court can find which
persuasively explain (considering Abbasi, Hernandez, or Egbert) why such a claim
arises in the same context as that in Bivens.  And, prior to Abbasi, the First Circuit
"construed Bivens claims with some generality."  Ortega v. U.S. Customers & Border
Protection, --- F. Supp. 3d ---, 2023 WL 2187896, at *5 n.2 (D. Mass. 2023) (noting
that—considering Abbasi and Egbert—it is "highly doubtful" that the First Circuit's
pre-Abbasi decisions which apply Bivens in this way "remain[] good law in all
respects").

13270432, at *10-*11 (N.D. Ga. Mar. 13, 2019) ("Ms. Robinson has not provided any authority indicating that a <u>Bivens</u> remedy exists for failure to intervene.  The Court has conducted its own search and similarly finds no such authority.").  Arias identifies one case, <u>Campbell v. City of Yonkers</u>, which held that a failure-to-intervene claim does not state a separate constitutional violation but is instead an alternate theory of liability for the alleged use of excessive force.  2020 WL 5548784, at *10 (S.D.N.Y. Sept. 16, 2020).  On that basis, the court rejected an argument that the plaintiff's failure-to-intervene claims presented <u>Bivens</u> in a new context.  <u>Id.</u>[7]

Regardless of whether a failure-to-intervene claim is an alternative theory of liability or separate constitutional violation, <u>Bivens</u> did not involve any theory that the defendant officers' failure to intervene should subject them to bystander liability under <u>Bivens</u>.  And, in light of the Supreme Court's recent <u>Bivens</u> jurisprudence, this seems like a meaningful difference.  "[E]ven a modest extension is still an extension."  <u>Abbasi,</u> 582 U.S. at 147; <u>see also</u> <u>Hernandez,</u> 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision" as <u>Bivens</u>).  Most importantly, however, (and for the reasons discussed above), the existence of an alternative remedial scheme is sufficient to place the case in a new context and foreclose this <u>Bivens</u> claim.

---

[7] The other case cited by Arias on this topic, <u>Damiani v. Duffy</u>, does not provide any analysis of this issue and is therefore unhelpful.  <u>See</u> 277 F. Supp. 3d 692, 706 (D. Del. 2017) (granting summary judgment in defendants' favor on failure to intervene claims because the plaintiff had not shown excessive force as opposed to analyzing whether the case presented <u>Bivens</u> in a new context).

For these reasons, Arias's failure-to-intervene claims apply <u>Bivens</u> to a new context and the existence of an alternative remedial structure requires the same analysis that the court used to dismiss Arias's first set of excessive-force claims. The court therefore grants defendants' motion for summary judgment on Arias's "failure to intervene" excessive-force claims.

## CONCLUSION

Arias's claims would extend <u>Bivens</u> to a new context and special factors counsel against expanding <u>Bivens</u> to that new context. Arias's claims are therefore dismissed. Defendants' motion for summary judgment (doc. no. 66) is granted. The clerk of court is directed to close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 27, 2023

cc:    Counsel of Record